UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA L. SHAFFER,

      Plaintiff,

v.                        Case No. 8:17-cv-565-T-33AAS

BANK OF NEW YORK MELLON
and SHELLPOINT LLC,

      Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Bank of New York Mellon and Shellpoint LLC's Motion to Dismiss the Second Amended Complaint (Doc. # 29), filed on July 3, 2017. Plaintiff Linda Shaffer filed a response on July 14, 2017. (Doc. # 30). For the reasons that follow, the Motion is denied.

**I.   Background**

Shaffer obtained a mortgage loan in June of 2006 to purchase a new home. (Doc. # 28 at ¶ 7). That loan was sold to Bank of New York Mellon later that year. (Id. at ¶ 8). Then, on January 17, 2012, Bank of New York Mellon sued for foreclosure because Shaffer had allegedly defaulted on her loan payments. (Id. at ¶ 9).

1

Years later, on September 7, 2016, Shellpoint —
Shaffer's loan servicer — "made an offer to Shaffer to
participate in a cooperative short sale program in which she
was eligible to receive up to $15,960.02 in relocation
assistance." (Id. at ¶ 10; Doc. # 28-1 at 2). "Shaffer
accepted the offer to participate in the cooperative short
sale program and sent a letter" and "a loss mitigation
application to Shellpoint" on September 14, 2016. (Doc. # 28
at ¶¶ 11-12; Doc. # 28-1 at 4-10). "The loss mitigation
application required Shaffer to report if she was in
bankruptcy or if she has received a discharge in bankruptcy"
and, as of September 14, 2016, "Shaffer was not in an active
bankruptcy, nor had she received a discharge." (Doc. # 28 at
¶ 12).

On September 16, 2016, after "Shellpoint sent a letter
to Shaffer indicating that additional documents were needed,"
Shaffer sent "the additional documents to Shellpoint to
complete the loss mitigation application." (Id. at ¶¶ 13-14).
Then, on September 21, 2016, "Shaffer provided all of the
documents required to accept the participation in the
cooperative short sale program." (Id. at ¶ 15). "On October
7, 2016, Shaffer provided additional documents per a
conversation with Shellpoint representative Rosario Cardoza

2

to participate in the cooperative short sale program." (Id. at ¶ 16). Again, "[o]n October 12, 2016, Shaffer in response to a conversation with Rosario Cardoza provided copies of two documents that Shellpoint requested to complete the package for participation in the cooperative short sale program." (Id. at ¶ 17).

Yet, on September 22, 2016, the foreclosure action was set for trial on November 23, 2016. (Id. at ¶ 18). And, on November 3, 2016, "Shellpoint sent a letter from Rosario Cardoza to Shaffer that failed to indicate that she ha[d] a complete loss mitigation package pending and requested that if she was interested in loss mitigation she would need to fill out an application." (Id. at ¶ 19). At trial, Bank of New York Mellon moved "to obtain a foreclosure judgment and for sale of the home against Shaffer." (Id. at ¶ 20). "The foreclosure judgment was entered on November 23, 2016." (Id. at ¶ 21; Doc. # 28-1 at 12-16).

On March 8, 2017, Shaffer initiated this action. (Doc. # 1). The Court dismissed the Complaint as a shotgun pleading on May 2, 2017. (Doc. # 21). Shaffer then filed her Amended Complaint. (Doc. # 24). Defendants filed their Motion to Dismiss the Amended Complaint on May 24, 2017, (Doc. # 25),

which the Court granted as unopposed on June 8, 2017. (Doc. # 27).

Shaffer filed her Second Amended Complaint on June 21, 2017, alleging: a violation of 12 C.F.R. § 1024.41(g) of Regulation X, which implements the provisions of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, et seq., by Shellpoint (Count I); breach of contract implied in fact by both Defendants (Count II); and breach of implied covenant of good faith and fair dealing (Count III) by both Defendants. (Doc. # 28). Defendants then filed the instant Motion to Dismiss the Second Amended Complaint (Doc. # 29), and Shaffer responded on July 14, 2017, (Doc. # 30). The Motion is ripe for review.

## II.   Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the]

complaint and all reasonable inferences therefrom are taken as true."). However,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. **Analysis**

Defendants argue the Complaint should be dismissed with prejudice for failure to state claims for any of the three counts. The Court will address each count in turn.

### A. **Regulation X**

The Second Amended Complaint alleges Shaffer completed her loss mitigation application sent to Shellpoint on September 16, 2016. (Doc. # 28 at ¶ 14). The regulation under

which Shaffer brings her claim, 12 C.F.R. § 1024.41(g), states:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless

certain exceptions, which no party argues are applicable here, are met. 12 C.F.R. § 1024.41(g). For purposes of the regulation,

> A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

12 C.F.R. § 1024.41(b)(1).

Shaffer's initial application is attached as an exhibit to the Second Amended Complaint. (Doc. # 28-1 at 7-10). Shellpoint argues it is incomplete on its face and contains false information. (Doc. # 29 at 6-7). Shellpoint asserts: "Because Shellpoint had not 'received all the information that [it] require[d] from a borrower in evaluating applications' for loss mitigation . . . by September 14, 2016 (or any later date), the regulation requiring it to pause the

foreclosure process did not apply." (<u>Id.</u> at 8)(quoting 12 C.F.R. § 1024.41(b)(1)).

But, in the Second Amended Complaint, Shaffer acknowledges that she provided further information and documentation to Shellpoint to complete the application. (Doc. # 28 at ¶¶ 13-15). Shaffer does not elaborate on what information and documents she provided Shellpoint, and has not attached these documents as exhibits. Therefore, the supposed flaws or misrepresentations Defendants point out in the initial application do not show that Shaffer never completed the application. And the Court will not look outside the four corners of the Second Amended Complaint to evaluate whether the supplemental information submitted by Shaffer failed to complete the application, as Shellpoint alleges. <u>See</u> <u>St. George</u>, 285 F.3d at 1337.

Because Shaffer may have clarified the apparent inconsistencies or errors in her September 14, 2016, application more than 37 days before the foreclosure sale, the Court cannot determine from the face of the Second Amended Complaint and exhibits that Shaffer never completed her application before the 37-day deadline. Therefore, this claim survives the motion to dismiss stage.

**B.   <u>Breach of Contract Implied in Fact</u>**

In Count II, Shaffer asserts a claim for breach of contract implied in fact, rather than a claim for breach of contract as she had asserted in her previous complaints. (Doc. # 28 at 5). Although Shaffer changed her theory to breach of contract implied in fact, Defendants present the same arguments for this claim that they raised for the traditional breach of contract claim in their previous motion to dismiss the Amended Complaint. (Doc. # 25 at 8-9; Doc. # 29 at 8-9). As a result, Defendants have failed to address the differences between breach of contract and breach of contract implied in fact claims.

Under Florida law, an implied-in-fact contract "is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." <u>Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.</u>, 695 So.2d 383, 385 (Fla. 4th DCA 1997); <u>see also</u> <u>Sheppard v. M & R Plumbing, Inc.</u>, 82 So. 3d 950, 952 n.2 (Fla. 1st DCA 2011)("A contract implied in fact requires actual agreement and results in a valid, enforceable contract."). "In a contract implied in fact, the assent of the parties is derived from other circumstances, including their course of dealing

8

or usage of trade or course of performance." <u>Rabon v. Inn of Lake City, Inc.</u>, 693 So. 2d 1126, 1131 (Fla. 1st DCA 1997)(citing Restatement (Second) of Contracts § 4, cmt. a (1982)). Whether a contract is implied in fact is "inferred from the facts and circumstances of the case." <u>Eskra v. Provident Life & Accident Ins. Co.</u>, 125 F.3d 1406, 1413 (11th Cir. 1997).

Still, "Florida courts use breach of contract analysis to evaluate claims of breach of contract implied in fact and breach of the covenant of good faith and fair dealing." <u>Resnick v. AvMed, Inc.</u>, 693 F.3d 1317, 1325 (11th Cir. 2012). "In order to properly plead a claim for breach of contract under Florida law, a plaintiff must prove the existence of a valid contract, a breach of such contract, and damages resulting from such breach." <u>Senter v. JPMorgan Chase Bank, N.A.</u>, 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011). A plaintiff must show the existence of a valid contract by alleging: "(1) an offer; (2) acceptance of the offer; (3) consideration; and (4) sufficient specification of the essential terms of the agreement." <u>Id.</u> Essentially, to state a claim for breach of contract implied in fact, the elements of a traditional breach of contract claim must be alleged, but the assent required to form a valid contract may be inferred from the circumstances.

Defendants argue that this claim fails because Shaffer "does not allege facts to establish a valid contract to sell her property existed" and that the "exhibits attached to [Shaffer's] complaint show, in fact, the parties never reached an agreement on her short sale." (Doc. # 29 at 8). They also argue the letter sent by Shellpoint to Shaffer "did not establish any agreement about a short sale or satisfy the Statute of Frauds." (Id. at 9).

The trouble with Defendants' first argument is that they only address this claim as a standard breach of contract claim. They incorrectly interpret the Second Amended Complaint as alleging Shellpoint's offer letter and Shaffer's sending her loss mitigation application in response alone created an express contract. But the theory of contracts implied in fact, which the Second Amended Complaint invokes, exists exactly for circumstances in which the conduct of the parties reveals that a contract does exist, even if an express contract has not been executed. See Baron v. Osman, 39 So.3d 449, 451 (Fla. 5th DCA 2010) ("A contract based on the parties' words is characterized as express, whereas, a contract based on the parties' conduct is said to be implied in fact. . . . While the law will not recognize an implied-in-fact contract where an express contract exists, a contract may be inferred

where an express contract fails for lack of proof."). As Shaffer correctly notes in her response, "Defendants make no arguments that Shaffer has not alleged fact[s] sufficient to establish a contract implied in fact." (Doc. # 30 at 4). Thus, Defendants' citation to cases dealing with traditional breach of contract claims is unavailing.

Shaffer alleges in the Second Amended Complaint that each party assented to enter a contract through its conduct. After "accept[ing] the offer to participate," Shaffer communicated with a Shellpoint representative, sent further requested documentations to Shellpoint, and "satisfied all conditions to participate in the cooperative short sale program by obtaining a realtor, listing the property for sale, and obtaining a purchase contract." (Doc. # 28 at ¶¶ 15-17, 35-36). Shaffer also "took affirmative action to make [a] motion to continue the trial in reliance on the participation in the cooperative short sale program" and "waived defenses in court as consideration for the contract." (Id. at ¶¶ 38-39). For its part, Shellpoint "took action to affirm each party's participation in the program to avoid a foreclosure by ordering an appraisal of the property." (Id. at ¶ 37). Thus, Shaffer has alleged that the parties' conduct after Shellpoint sent its letter and Shaffer submitted her loss

mitigation application demonstrates the existence of a contract implied in fact — a contention that Defendants fail to address in their Motion.

Additionally, Defendants argue "Shellpoint's letter would not be enforceable under Florida's Statute of Frauds even if the letter had guaranteed approval of Ms. Shaffer's application" because "[t]he letter [] did not contain any material terms" and "did not establish any agreement about a short sale." (Doc. # 29 at 9). "The statute of frauds is an affirmative defense under Federal Rule of Civil Procedure 8(c)." Hewitt v. Mobile Research Tech., Inc., 285 F. App'x 694, 696 (11th Cir. 2008). Therefore, the breach of contract implied in fact claim can only be dismissed for failure to comply with the Statute of Frauds if it is clear on the face of the Second Amended Complaint that the contract was never reduced to a sufficient writing. See LeFrere v. Quezada, 582 F.3d 1260, 1263 (11th Cir. 2009)("If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6).").

"Several writings may constitute a valid and binding written contract when they evidence a complete meeting of the minds of the parties and an agreement upon the terms and conditions of the contract." Waite Dev., Inc. v. City of

Milton, 866 So.2d 153, 155 (Fla. 1st DCA 2004); see also U.S. Distribs., Inc. v. Block, No. 09-21635-CIV, 2009 WL 3295099, at *5 (S.D. Fla. Oct. 13, 2009)("[T]he e-mails, several of which are signed by the Defendant and the Plaintiff's alleged agents, attached to the complaint meet the writing requirement of the statute of frauds. . . . Florida courts are flexible as to what kinds of documents satisfy the writing requirement, and Florida law provides that electronic signatures 'may be used to sign a writing and shall have the same force and effect as a written signature.'" (quoting Fla. Stat. § 668.004)).

Here, Shaffer alleges that there were multiple communications between herself and Shellpoint following the initial submission of her loss mitigation application. (Doc. # 28 at ¶¶ 14-17). She mentions two "conversations" with Shellpoint representative Rosario Cardoza, but does not specify whether those conversations were written or oral. (Id. at ¶¶ 16-17). And Shaffer was not obligated to attach copies of all written communications between herself and Shellpoint that could form the basis of a contract as exhibits to her Second Amended Complaint. See LMP Ninth St. Real Estate, LLC v. U.S. Bank Nat'l Ass'n, No. 8:16-cv-2463-T-33AEP, 2016 WL 6947381, at *4 (M.D. Fla. Nov. 28, 2016)("LMP

Ninth Street [was not] obligated to attach all writings comprising the alleged agreement to its Complaint."). Therefore, while Shellpoint's letter alone may not have created a binding contract satisfying the Statute of Frauds, it is not clear on the face of the Second Amended Complaint whether all the written communications between Shaffer and Shellpoint constitute a valid contract that complies with the Statute of Frauds. See Id. at *3 ("There is nothing on the face of the Complaint to indicate that no other writings exist regarding the alleged agreement to reduce the prepayment fee or that, if multiple writings exist, they would be insufficient to form a valid contract in the aggregate."). Defendants' argument that the initial letter inviting Shaffer to apply for a loan modification cannot satisfy the Statute of Frauds does not preclude the possibility that further writings were undertaken between the parties, which in the aggregate created a contract that complies with the Statute of Frauds.

Defendants have not argued that contracts implied in fact, which are typically established through conduct other than express writings, may never satisfy the Statute of Frauds. And there are no allegations in the Second Amended Complaint that facially foreclose the possibility that the

14

alleged contract satisfies the Statute of Frauds. Therefore, Defendants have not carried the burden of establishing the Statute of Frauds affirmative defense. See Sleit v. Ricoh Corp., No. 8:07-cv-724-T-23TBM, 2008 WL 4826113, at *4 (M.D. Fla. Nov. 4, 2008)("The party alleging unenforceability due to the statute of frauds has the burden of establishing this defense." (citing Spanziani v. Bancroft, 618 So.2d 744, 746 (Fla. 5th DCA 1993)). At this juncture, this claim survives.

C.   **Breach of Implied Covenant of Good Faith and Fair Dealing**

In Count III, Shaffer asserts "Defendants breached the implied covenant of good faith and fair dealing by pursuing a foreclosure judgment and order of sale while the parties had agreed to avoid foreclosure by participating in a cooperative short sale program." (Doc. # 28 at ¶ 52).

"Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract." Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999). "[A] proper pleading of breach of the covenant of good faith and fair dealing necessarily requires the pleading of a valid contract." Senter, 810 F. Supp. 2d at 1362. "To state a claim for breach of the implied covenant of good faith under Florida law, a plaintiff must allege that 'an express term of a

contract was violated.'" <u>Hamilton v. Suntrust Mortg. Inc.</u>, 6 F. Supp. 3d 1300, 1310 (S.D. Fla. 2014)(quoting <u>Medinis v. Swan</u>, 955 So.2d 595, 597 (Fla. 2d DCA 2007)).

Defendants argue that because "[n]o contract existed, [] no breach of the implied covenant of good faith and fair dealing occurred." (Doc. # 29 at 10). As discussed in the previous section, Shaffer has plausibly pled the existence of a contract implied in fact, based on the conduct of both parties during the loss mitigation application process and the foreclosure proceedings. Therefore, this claim also survives.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants Bank of New York Mellon and Shellpoint LLC's Motion to Dismiss the Second Amended Complaint (Doc. # 29) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>19th</u> day of July, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

16